Your Honors, I wish to begin by putting this appeal into context because I think it's very, very important for the Court to consider that this case comes out of a $1.8 billion settlement in bankruptcy that was voluntary, that was approved of by the District Court, whereby Asarco put aside all the fighting and consistent with the policy of CERCLA and the objectives, the public policy objectives of CERCLA. It paid for the pollution that it caused and the pollution that so many others caused, including ARCO, with the right to seek contribution under Section 113 of CERCLA. And this case is about one of those sites, the East Helena site, where Asarco paid over $110 million to clean up not only its own impacts, but those of ARCO's. And this case is before this Court with the District Court having granted summary judgment brought by ARCO, which summary judgment constitutes a reversible error because the Court there engaged in an improper and incorrect analysis between a 2009 consent decree reached in the area where the $110 million were paid for a comprehensive cleanup and a 1998 RCRA consent decree. It compared the work, and if necessary, we can go into the reasons why that comparison was so incorrect, but it compared the work. Well, we have to decide if the RCRAs, a RCRA settlement can start the running for a CERCLA contribution, right? But then also, if the RCRA settlement here was a resolution. Exactly, Your Honor. And the — our contention is, and we believe that the Court — that the record is so replete with examples of why it was not a resolution, a resolution as distinct from a settlement, which are two very different things. Do you also dispute that RCRA couldn't start if it — let's say it — I know you heavily dispute that it was not a resolution, that it didn't resolve everything. But had it resolved everything, assuming such that the agreement was such that it resolved everything, would it still be your position that a resolution on RCRA couldn't apply to CERCLA? It is not our position. Under the statute at issue, CERCLA Section 113, F3b, what has to happen there under the most recently this Court in Whitaker, that there must be a resolution of a party's liability for response costs or response actions. Now, there's a whole question that — that has not really been addressed yet about whether the payment of RCRA fines constitute response costs. Maybe you could help me just a little. I want you to back up a little bit further. The RCRA settlement or whatever the — what — what did that really accomplish? What was that — what was that all about? Yes, Your Honor. I'd like to address that. The RCRA decree came out of a complaint that was filed by EPA to correct management activities at an operating facility, which is the very typical use of RCRA. And that had about eight causes of action in it. And the purpose of that, when you say management, they wanted them to — to — to get control of the pollution? Is that what they mean? They wanted them to correctly manifest the — the waste that they were storing. They wanted them to correct the way they were storing waste, characterizing the waste. But it was not at all, not for a minute, Your Honor, about remediation, about restoring the land. The RCRA claim they identified these violations of, I guess, of what? Violations of RCRA. Of RCRA. Statutory violations, which — And EPA was allowed to — to seek to remedy that situation, as well as impose fines? EPA and ASARCO, an operating entity at the East Helena site, got together with — with EPA, and they said, okay, let's get these civil fines settled. And what we're going to do is we're going to implement some changes in our process. We're going to have some — some analysis. We're going to do better characterization. We're going to do better labeling. We're going to be doing better storage. We're going to improve our processes. Did it require any cleanup? It did not require cleanup. It required the control, management control, of the processes such that there would be no releases. It was protective. It was management-oriented in — in — in scope and in intent. Did any of the work overlap — would any of the work that was required under RCRA, would it overlap with any of the work that was later required under the — under the Circle of Consent? Yes, Judge Paez, I — I think it is important to take a look at whether there's overlap. That's an interesting question, and I will address that. But I thought you were arguing that — one of your arguments was that a party may only bring a contribution claim where the settlement was entered under RCRA rather than under CERCLA. I thought you were arguing that. You just told me a few minutes ago you weren't. Our position is, Your Honor, that — that a party may seek contribution when it has for and about response costs or response actions. If the — the items that have been addressed under a RCRA decree constitute response costs, then we acknowledge that a case can be — Okay. So then — okay. So the EPA could have sought cleanup of the East Helena site under CERCLA but transferred responsibility to the RCRA program. So if RCRA and CERCLA can provide similar remedies, so you wouldn't dispute that just because it's a RCRA that it can't be considered — so you're not saying that? I — I understood you to say that, okay, the fact that the first one was RCRA, that And then your second argument was that even if you can consider a RCRA settlement, this settlement did not resolve. There are two arguments, and — and I would say that in response to your question, Your Honor, RCRA is a very imprecise statutory mechanism. Well, you're being imprecise, though, a little bit right now. By which it is not the best way to cause a cleanup. The best way to cause a cleanup is under CERCLA. And that's why — and your — your question is — So are you contending that the first settlement could never be under RCRA to trigger the statute of limitations? If the first settlement brought under RCRA resolved a party's liability for response costs, which it did not do, this resolved — I know you're not conceding that this one did, but I also read your contention that just by virtue of the fact that it was under RCRA, that couldn't — We have to kind of — Did you say that in your briefs? Or am I making that up? If it was said in the briefs, it was perhaps said at an earlier stage as the arguments were more refined. But what I will say is what the statute says. And the statute talks about response costs. And the statute talks about resolution. And the statute we are talking about is CERCLA Section 113. So my question was, was there the cleanup or the action that was required under RCRA, the RCRA settlement, did it overlap in any way? And I'm not talking about resolution of any — I'm just asking, did it overlap? I mean, was there — Your Honor, respectfully and with due respect to the district court, I believe they got it totally wrong when they — when the district court found that there was overlap. If you look to the RCRA decree and what was required there, it isn't anything like the 2009 consent decree, which contained full resolution. That talked about remediation of the land, remediation of the water, remediation of the soils, dealing with off-site contamination. The RCRA decree does not overlap with the 2009 consent decree. Okay. So let's just assume for a moment that it — given what the district court said, I just want you to assume that there was some overlap. But your other argument is that there was no resolution of any response, what would be due as a response cost under CERCLA. Yes. That is, I would say, the argument. Right. We can spend all day talking about whether certain terms under CERCLA maybe apply to certain words that were used in the RCRA decree. That doesn't really — So why wasn't there a final, quote, unquote, resolution as a result of the RCRA consent? Yes, Your Honor, because this was operating an industry that was operating. And RCRA is commonly used to bring industries like this, smelters, mining companies, into compliance and not to resolve environmental liability under CERCLA for the long term. Under the RCRA settlement, did the government reserve its right — and I use the word government loosely — to seek response costs under CERCLA against Erosco? Absolutely, Your Honor. And this is very important. Under paragraphs 136, 137, 138, 209, and 214 of the RCRA decree, the government reserved its rights all over the place. Let me read this, because I think it's very important. Under — I think we've read these. Well, thank you, Your Honor. I think you're using up your time. I understand. I'm shadowboxing. Very good. But to summarize, then, without reading them all into the record, the decree was expressly stated not to be a resolution, not to be a covenant not to sue, not to be a release or a waiver. It expressly reserved the EPA's right to come back onto the property and do whatever they wanted to do under RCRA, under CERCLA, under the Clean Water Act. And as to the issue, Your Honor, about the comparison between the two, clearly the district court got it wrong when it said that they overlapped and they were the same and a mere continuation of a cleanup, which it is not, when they failed to even recognize that in the 2009 consent decree, natural resource damages were addressed for the first time for millions and millions of dollars. How could the district court have said that this was a mere continuation of activities agreed upon in 1998 when natural resource damages weren't even discussed in the 1998 RCRA decree? Well, I think the best argument that they were making was that the 1998 RCRA decree settled the government's complaint for RCRA and the Clean Water Act violations and sought adjunctive relief, including corrective actions. So then they would make the argument that such corrective actions required cleaning up hazardous contamination, and that's why they're arguing that the decree resolved a SARCOS liability. I think that's the argument they're making. Judge Galhen, the use of the term corrective action is very different in environmental law from remediation, remedial activity. Corrective action in the context of the RCRA decree means clean up your act, get some better management processes in place, get some better labeling and storage, and all of those things that RCRA is about, not SARCLA. And I'm sure ARCO is going to get up here and try to find words here and there that are the same in both statutes. But as a practical matter, our government uses SARCLA to clean up property. And in 2009, when a SARCO stepped up and paid... Okay, but right now, it's my understanding that I understand why this, your argument perfectly well about why this doesn't resolve it. But are you still... You're not arguing anymore that a RCRA settlement couldn't, under some circumstances, resolve for purposes of the SARCLA statute of limitations? To the extent a RCRA settlement resolves a party's liability for response costs or and therefore trigger the statute of limitations. All right. But there isn't any case that specifically said that right yet? Not in the Ninth Circuit. Not that I'm aware of, Your Honor.  Do you want to save some time for rebuttal? Yes, Your Honor. Thank you. Okay. Thank you. Good morning. May it please the Court? Bill's sneaking in under the morning. Okay. I'm sorry. You're still sneaking in. It's still good morning. 11 o'clock. Oh, good morning. Good morning. Thank you. I'm Shannon Stevenson on behalf of Atlantic Ridge Field. Your Honors, I couldn't disagree more emphatically with Mr. Evans' description of the 1998 consent decree and what that was designed to accomplish. It absolutely was designed to accomplish a comprehensive cleanup of the East Helena Superfund site. I just want to know, am I crazy? Or were they previously contending that a RCRA settlement could never act in the same way that a CERCLA settlement to trigger the statute? Your Honor, that's what I understood their argument to be, and that's, in fact, the only argument that they made on that point to the District Court, and I'm happy to respond to that argument. Oh, okay. But then, all right. But then, but moving on to the fact that the 1998 RCRA decree states that a SARCO's complete performance under the decree constitutes full satisfaction of all claims for civil penalties. It says nothing about claims for injunctive relief, that is, for response actions, or in RCRA parlance, corrective actions. How does that affect our analysis, if at all, as to whether a SARCO resolved its liability for response actions under the RCRA decree? Right. I'm going to make several responses to that. The first is, I think a SARCO is confusing the notion of resolution of liability with release, and those are two different things. In our view, under this 1998 consent decree, a SARCO agreed to complete a comprehensive cleanup of this site. It accepted liability for that. How do you read that? I mean, I have it right here in front of me, and I looked at it before today's argument again, and I don't see how you read it that way. Your Honor, if you look at Article 7 of the consent decree, that is . . . Got it. Penalty for past violations. I'm sorry. I'm sorry. Corrective action at East Helena. Right. It goes through an incredible list of all of the things that a SARCO is going to have to accomplish to clean up this site, including all of the investigatory efforts, all of the approvals that it will need for EPA on that, all of the corrective measures that it's going to have to take, and it is a site-wide cleanup. It includes soil and groundwater and the facility itself and the area of the site that's outside of the facility. It is the exact type of cleanup that you would have under CERCLA, and it has all of the same protections put in place. And in paragraph 18 of the consent decree, the EPA explains the reason why we're transferring this from the CERCLA program to the RCRA program is just because there's an operating facility and there are aspects of the investigation and remediation that are better suited under RCRA to an operating facility. But nothing about that changed the fact that this was designed to be a complete and comprehensive cleanup of the site that would meet all of a SARCO's obligations under CERCLA in that regard. And recall, this was an NPL site. Why didn't it get – does this release provide – does this agreement provide for a complete release of any future liability – of any liability for – It provides – so what the statute requires is that you resolve liability for some response action. This is clearly a response action. Response is defined very broadly under CERCLA. To the extent that SARCO is arguing it has to have some complete release for everything, that's not required by the statute to trigger contribution rights. It's only required that you resolve liability for some response action. And that's exactly what happened here. And to come back to your question, Judge Callahan, if you look at paragraph 214 of the consent decree, what it says is, as long as a SARCO complies with its obligations on this corrective action, EPA will forego from bringing any corrective action under RCRA to compel this same response. This is – You mean under CERCLA? No, no. Under RCRA. Under the RCRA corrective action section. Which cause? Which paragraph were you just talking about? Paragraph 214, Your Honor. In the – in which decree? In the 1998 consent decree. Paragraph 214. Okay. Well, you also argue, I think, that a SARCO undertook response actions under the 1998 RCRA decree. But the decree itself does not prescribe specific cleanup activities. Instead, it appears to defer such activities until sometime after a SARCO completes various studies. So, why should we find that a SARCO incurred response obligations under the RCRA decree? Your Honor, I agree that the consent decree gives EPA a lot of authority to work with a SARCO to figure out what the precise investigation and remediation is going to be. But that doesn't mean that a SARCO hasn't assumed that liability. It has. It has agreed to undertake all of the necessary steps that EPA requires to investigate and remediate the site. And to come back to your earlier question, Judge Paez, the overlap between what was required under this 1998 consent decree and between what was funded in the 2009 decree resulting from a SARCO's bankruptcy, it was complete overlap. That's what the district court found. There were no new obligations or work generated under the 2000 consent decree that a SARCO was funding. It was merely funding the obligations that it undertook in the 1998 consent decree. How did you characterize paragraph 214 in the 98 decree? Right. What you'll see in paragraph 214. It says, this decree shall not be construed as a covenant not to sue, release, waiver, or limitation of any rights, remedies, blah, blah, blah, which EPA has under RCRA, CERCLA. And then it says, however, as long as a SARCO is complying with its obligations under part 7, which is its obligations to conduct this corrective action, EPA will forego bringing any RCRA lawsuit to demand this corrective action. And that's a settlement of those claims, the very claims that were brought that triggered this consent decree. EPA sued a SARCO to demand injunctive relief that would require this cleanup. And this settlement resolved that complaint. And in it, a SARCO said, we commit to do this cleanup. That is a resolution of liability for that particular response cost that triggered its contribution rights. Is there a difference between a covenant not to sue so long as a party complies with its cleanup obligations and a covenant not to impose additional liability on a party not contemplated by the settlement agreement? Your Honor, I don't think there's any support in CERCLA that says you have to have a covenant not to sue in order to resolve liability. That's nowhere in the statute. Now, to the extent the SARCO is saying you can never resolve liability if any party has a future performance action, I think that also is not contemplated by the statute. And in fact, would result in contribution rights almost never arising any time EPA orders a cleanup or has a cleanup decree, because those always depend on — What about natural resources? Right. Let me address the NRD point that Mr. Evans raised. In this case, a SARCO did not seek natural resources damages. It only sought response costs or the cost for its response action. If you look at their complaint, there is no claim about natural resource damages. And it's just not properly before this Court. The district court said that all of the response action costs that a SARCO funded under the And so there just hasn't been a claim for NRD here. Let me talk a big picture also about why a SARCO's arguments here are wrong. Under the rule that they're proposing, a PRP could enter into a settlement agreement judicially approved with the EPA whereby it would agree to undertake a comprehensive cleanup of a site under RCRA and according to — or quite frankly, under CERCLA, as long as there was a conditional covenant not to sue. And that PRP, under a SARCO's theory, would have no ability to seek contribution maybe ever or certainly potentially for many decades while that cleanup was ongoing. That is completely contradictory to the broad contribution rights that CERCLA seeks to provide. And the reason why it does that is it encourages parties to settle. The contribution rights were put in place so that PRPs would be incentivized — Don't you only get contribution for remediation that's occurred? Well, Your Honor, I think what normally happens when you have a party who, like a SARCO here, agrees to undertake a comprehensive cleanup, they can come in and ask for declaratory relief with respect to contribution from other PRPs and then that will be implemented as the costs are spent. They also have the ability to bring successive actions as they incur their costs if they want to do it that way. But you could certainly get a declaration of a contribution obligation without the precise amount of money defined. But I think the trigger for that is your resolving liability for the response action, which a SARCO did in the 1998 consent decree by saying, we commit to complete this comprehensive cleanup. What did paragraph 209 of the 98 decree? Paragraph 209 — That's the Orozco payment of all civil penalties due and Orozco's commitments to pay out, blah, blah, blah. Right. Shall constitute full satisfaction of the claims for civil penalties. This release includes any alleged civil violations, but does not include alleged civil violations relating to receipt storage or smelting of the encyclical materials themselves. Goes on. Right, Your Honor. And this paragraph just defines an aspect of the settlement between a SARCO and the United States here in terms of the release of the civil penalty obligations from the consent decree. That's really all it is. And there's no dispute here that there is a settlement. And again, I think we just come back to the question, did a SARCO resolve its liability for some response action? And it's our position that when you have a complaint filed against you and you come in and agree as a PRP to undertake a comprehensive cleanup and that that is entered as a final judgment by the court, that that is a resolution of liability. It's just a very straightforward position. Let me ask — let me change this question a little bit, make — restate this a little bit differently. Was there anything more under the — under the CERCLA decree that they were required to do that they didn't do under — No. No. The CERCLA decree required no new work. All that happened under the CERCLA decree is that they funded with cash the obligations that they had undertaken in the 1998 consent decree. That's all that happened. And that's what the district court found. And SARCO didn't challenge that in this appeal. I heard Mr. Evans say that he was challenging it now, but they didn't brief that issue at all before this Court. And so I think we are stuck with the district court's determination that those were complete overlap. And following up on that point — So why was the — why was the decree in — what is it, 20 — 20 — when was it? 2009. 2009. Why was that necessary? Your Honor, SARCO had undertaken all of these obligations in 1998. It hadn't actually been following through with doing what it was supposed to do. In 2005, it filed for bankruptcy. And another way we know that it had resolved its liability is the United States came into the bankruptcy and said, SARCO has all these liabilities to us under the 1998 consent decree. And so the 2009 decree was just a settlement of — out of bankruptcy in a way that was able to fund the obligations that had been previously undertaken. There was no new work involved. It was merely a fortuity based on this bankruptcy. And this was another point I wanted to make, which is they're arguing for a rule where they would not have had a right of contribution if they had simply gone forward and done the 1998 decree and not declared bankruptcy, but that by virtue of declaring bankruptcy, that they should get some additional benefit, this new contribution right, that a party that had done the work and done the right thing wouldn't have. And this Court addressed this very similar in another SARCO bankruptcy case, addressed this notion of reviving contribution rights through bankruptcy in the SARCO v. Celanese chemical case, which is 792 F. 3rd 1203, and said, we're not going to do that. We don't get new rights out of bankruptcy. Right. But that's not what's happening. That's not what they're trying to do here. I disagree. I think that's exactly what they're trying to do. That's not quite what they're trying to do. I think because, Your Honor, the — If you adopt their — if you agree with their argument that the RCRA decree did not resolve because of the way it's framed and whatnot. Right. So let me just come back to that. And then the statute of limitations did not begin to run until after they entered into this 209 decree. That's true. Let me emphasize, there is no case out there anywhere with a judicially approved settlement like this that has found that that didn't resolve liability for purposes of triggering contribution rights, not one. Every case they have that talks about these different provisions, every one of them are administrative orders by consent. Well, is there any case in this circuit that actually says, though, that a RCRA settlement can be the basis? No, Your Honor. The best case on that is the Trinity case from the Third Circuit. And there aren't that many of these cases at the circuit court level, but Trinity has by far the most persuasive rationale here. Simply, when you look at the 113F3B, there's nothing in it that says that you have to resolve CERCLA liability. It says resolve liability for some response action. Response and CERCLA is defined incredibly broadly to include all kinds of investigatory and remedial activities exactly like the kind that were in the 1998 consent decree. Well, do you think it's important for the Ninth Circuit to say that if we were inclined to do so? Would it be important for the Ninth Circuit to say? To say that a RCRA settlement, it doesn't have to just be a CERCLA settlement. Yes, yes. I think that's exactly what the court should hold because there's no support for limiting it to CERCLA liability or CERCLA response actions only in the statute. It doesn't exist. And I think, again, the Trinity case from the Third Circuit is right on point. Its analysis is right on point. And the Second Circuit, which is the only circuit that had gone the other way, has actually backed off. It's kind of retreating. Correct. Correct. But, again, we have unique facts here in terms of resolving liability. Again, this was an NPL site declared by the EPA under CERCLA. After doing several steps of work with ASARCO, it came in, it filed a complaint that demanded injunctive relief that was going to be a complete cleanup of this site. The parties settled that lawsuit, and ASARCO promised that it would do this comprehensive cleanup. When you come in and you say, I'm going to do this comprehensive cleanup, that is a resolution of liability. So did ARCO get off the hook because they were operating the facility at the time? Your Honor, I see my time's about to expire. I'm just curious. ARCO sold its plant to ASARCO back in 1972. The EPA looked at ARCO as a PRP as well and elected not to pursue it. Okay. Thank you. Thank you. Your Honors, if I had to defend against an EPA action today where the EPA came on to the ASARCO property and said, clean up this property, and they showed me the 1999, the 1998 RCRA decree, I would say there's no way that we have to do it. If they showed me the 2009 consent decree, I would say you are exactly right. It needs to be cleaned up, it needs to be cleaned up comprehensively, and we need to use the $110 million that we put into this to do so. But the RCRA decree does not do that. Judge Callahan, you asked the question repeatedly, and I want to make sure I address it. Does RCRA prevent one from pursuing contribution under Section 113 if the action's brought that way? And there is one case. It is the Merrick case, M-E-H-R-I-G case cited in our briefs. It's at 516 U.S. 479. It's a 1996 Supreme Court case, and it basically says that there's no contribution under RCRA. But your question may be a little different, which is, can RCRA be used to seek contribution if your settlement involves RCRA? And we come back to the central point. If the settlement, the consent decree, the agreement, the writing on a cocktail napkin says that the parties agree that they resolve their liability for response costs or response actions, and there's nothing else in the complaint that constitutes a reservation or a limitation on that right, then you have the ability to seek contribution under 113 for those specific costs, and the statute of limitations begins to run. But that didn't happen here. Mention was made in my colleague's presentation about the complaint and how that sought comprehensive cleanup. We asked the Court to please look at that complaint. The complaint in the? In the RCRA action. In the RCRA action. That complaint did nothing of the sort. It sought civil penalties and operating management corrections. In fact, the consent decree makes clear, as Judge Paez pointed out in reading from the RCRA decree, that this is for alleged civil violations relating to receipt and storage of smelting materials, and that very decree goes on to say you are not released for what happened to those materials, for the materials themselves. That's at paragraph 209. And as to paragraph 214, where the Court correctly points out that this States over and over again it's not a release, it's not a waiver, it's not a limitation of any rights, we can come in under CERCLA, RCRA, whatever, except for paragraph 209. If you go to paragraph 209, it references civil penalties. That's all that was settled. Okay. Got your argument. Thank you, Your Honor. Thank you very much. Thank you. Matter is submitted at this time. Thank you, counsel. Appreciate your arguments. Interesting case. Another interesting case today. We're in recess.
judges: Fisher, Paez, Callahan